UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

PAUL SPECA,

Plaintiff,

v.

AETNA LIFE INSURANCE COMPANY,

Defendant.

Case No. 2:18-cv-00835-MMD-GWF

ORDER

## I. SUMMARY

Plaintiff Paul Speca challenges Defendant Aetna Life Insurance Company's decision to deny his claim for short-term disability ("STD") benefits under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq.* ("ERISA"). (ECF No. 1.) Before the Court is Plaintiff's motion for judgment on the pleadings and administrative record under Federal Rule of Civil Procedure 52 (the "Motion").[1] (ECF No. 23.) The Court held a hearing on the Motion (the "Hearing"). (ECF No. 29.) Following a *de novo* review of the administrative record, and as further explained below, the Court will remand Plaintiff's case to Defendant for further investigation because he was effectively deprived of an administrative appeal when Defendant initially—and quickly—denied his claim on the procedural ground that he produced no medical records to support his claim.

## II. LEGAL STANDARD

"ERISA was enacted to promote the interests of employees and their beneficiaries in employee benefit plans, and to protect contractually defined benefits[.]" *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 113 (1989) (internal quotation marks and citations

---

[1]The Court also reviewed Defendant's response (ECF No. 26), and Plaintiff's reply (ECF No. 27).

omitted). The parties agree that, for purposes of the Motion, this Court essentially sits as an appellate court reviewing the decision of the Defendant insurance company as if it were a lower court. (ECF Nos. 23 at 9, 26 at 8.) The Court's review is *de novo* "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone*, 489 U.S. at 115. Here, the parties agree the applicable plan confers no such discretion. (ECF Nos. 23 at 9-10, 26 at 8.) Thus, the Court reviews Defendant's decision to deny Plaintiff STD benefits *de novo*.

Further, the parties agree the Court does not apply the summary judgment standard to decide the Motion. (ECF Nos. 23 at 9-10, 26 at 8.) Instead, the Court must weigh the evidence contained within the administrative record (ECF No. 17 (the "AR")). *See Kearney v. Standard Ins. Co.*, 175 F.3d 1084, 1095 (9th Cir. 1999). In other words, "[t]he court simply proceeds to evaluate whether the plan administrator correctly or incorrectly denied benefits[.]" *See Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 963 (9th Cir. 2006). But the Court has an obligation "to undertake an independent and thorough inspection of an administrator's decision." *Silver v. Exec. Car Leasing Long-Term Disability Plan*, 466 F.3d 727, 728 (9th Cir. 2006) (citation omitted). And while the Court may consider evidence not contained in the AR because the *de novo* standard of review applies here, the Court should generally rest its merits decision on evidence contained within the administrative record. *See Abatie*, 458 F.3d at 969-70.

Plaintiff bears the burden of proving his entitlement to STD benefits by a preponderance of the evidence. (ECF Nos. 23 at 9, 26 at 8.) *See also Muniz v. Amec Const. Mgmt., Inc.*, 623 F.3d 1290, 1294 (9th Cir. 2010) ("[W]hen the court reviews a plan administrator's decision under the de novo standard of review, the burden of proof is placed on the claimant.").

///

///

///

///

2

## III. FINDINGS OF FACT

Plaintiff worked at The Home Depot.[2] (ECF No. 12 at 1.) Plaintiff claims he stopped working there on November 6, 2015 because he became disabled—primarily, he was falling asleep unpredictably and uncontrollably. (ECF No. 23 at 4-6.) Defendant administers a STD plan for Home Depot under group short-term disability policy No. GP-839226 (the "Policy"). (ECF No. 12 at 1-2.) Plaintiff is covered by the Policy. (*Id.* at 1.) On November 7, 2015, Plaintiff submitted a claim for STD benefits under the Policy. (ECF No. 17-2 at 4.)

The Policy provides that Defendant "will make notification of a claim determination as soon as possible but not later than 45 calendar days after the claim is made." (ECF No. 17-7 at 2.) The Policy further provides that Defendant may extend that 45 day window twice, by 30 days each time, if Defendant notifies the claimant within the first 45 day window of its intent to extend. (*Id.*) If Defendant extends the time in which it will make a determination, the Policy requires Defendant to explain to the claimant why it needs the extension, and when the claimant can expect a determination, such notice specifically including the standards Defendant will use to make its determination, the unresolved issues that prevent a decision on the claimant's claim, and the additional information Defendant needs to resolve those issues. (*Id.*) The Policy then gives the claimant 45 days to provide the information Defendant requests in its notice of extension.

If Defendant denies a benefits claim, the claimant may appeal the decision by making a request—either orally or in writing—within 180 days with an explanation of why the claimant is appealing. (*Id.* at 3.) The claimant may submit any information he or she would like Defendant to consider in connection with their appeal, including documents, records, etc. not submitted in connection with the initial claim. (*Id.*) The Policy provides that Defendant must decide the appeal within 45 days, subject to a 45-day extension if

---

[2]Plaintiff listed The Home Depot, USA, Inc. as a defendant in his Complaint, but the parties stipulated at the Hearing to Home Depot's dismissal because Defendant Aetna fully funds the benefit at issue, and the Court dismissed Home Depot. (ECF No. 29.)

Defendant notifies the claimant within the first 45 days. (*Id.*) Similar to the initial claim process, the extension notice must indicate the special circumstances requiring an extension of time and the date by which a decision can be expected. (*Id.*)

Here, Defendant decided to deny Plaintiff's claim in less than 45 days. Following Plaintiff's November 7, 2015 claim, Defendant's internal notes indicate Defendant's representative Nell Durand called Plaintiff at 11:38 a.m. on November 9, 2015, and left him a message. (ECF No. 17-2 at 14.) The note says: "Provider's office was contacted and request sent; we'll f/u w/ associate on 11/13/15; determination is on 11/20/15; to help support STD benefits, we will need exam findings, dx test results, tx plan, work status and/or confirmation of sx/hospital records." (*Id.*) There is no evidence that Plaintiff returned this call.

On November 13, 2015, Durand called Plaintiff again. (ECF No. 17-2 at 17.) Her notes indicate she could not leave a message because there was "no voice mailbox set up." (*Id.*) Her notes further include that "a call will be made in 2 business days to inform of status; determination is on 11/20/15[,]" and to "send no contact letter." (*Id.*) Durand's "no contact letter" began, "Please note, if we've spoken since the date of this letter, please disregard[,]" and ended with an admonition to "[c]all us as soon as possible." (ECF No. 17-4 at 160.) However, the bulk of the letter read:

> We're sending this letter because we haven't been able to reach you by phone about your short-term disability (STD) claim. We need to review your medical information to see if we can approve your STD benefits. If we don't hear from you within 7 days from the date on this letter, we'll move forward with our claim review using any information we were able to get on our own.

(*Id.*) But this time, Plaintiff called back—on November 16, 2015. (ECF No. 17-2 at 70.)

The notes from that call indicate Plaintiff requested he interact with a different representative because he could not understand Durand's messages. (*Id.*) They also indicate that the representative Plaintiff spoke with told him Defendant was still waiting on documentation from his medical providers, and added a note regarding one of Plaintiff's treating physicians that Plaintiff had not previously disclosed. (*Id.*) Later that day, a different representative, Jody Glass, called and left Plaintiff another voice message stating

4

Defendant needed Plaintiff's help in gathering medical records, including a fax and claim number that Plaintiff could use to submit them. (*Id.*) Her notes also indicate she stated on that message that Defendant intended to make its decision on his claim within 14 days of the date he first submitted it, and urged him to call back. (*Id.*)

Defendant denied Plaintiff's STD claim on November 20, 2015. (*Id.* at 162-63.) Defendant denied Plaintiff's claim because he did not submit, nor had Defendant been able to obtain at that time, any clinical documentation supporting his claim:

> Your file has been reviewed in full. It has been determined that there is no clinical information received from your treating provider to support your inability to perform the material duties of your own occupation as a Office Associate effective 11/07/2015.
>
> We have attempted to obtain medical information from your treating provider, Dr. Mike Karagiozis & Dr. Bertoli, to date they have not provided the required medical information to support your claim for disability benefits. Unfortunately, to date, we have not received any clinical information to support your inability to perform the core elements of your job functions as a Office Associate, to determine if you are disabled from your own occupation. Therefore, you do not qualify for STD benefits[.]

(*Id.* at 162.) Defendant's internal notes also reflect that one of its representatives followed up with a phone call that same day, and left a voice mail, also stating that Defendant denied Plaintiff's claim because he did not submit medical records. (*Id.* at 70.)

The AR also reflects that Defendant attempted to gather medical records from Plaintiff's treating physicians Dr. Karagiozis and Dr. Bertoli, but did not wait to receive them before denying Plaintiff's claim. (ECF No. 17-2 at 16, 18-19, 162.) Further, as explained above, nothing in the Policy required Defendant to decide within 14 days. In addition, there is some evidence in the AR to suggest that Defendant told Plaintiff it would only delay or defer a decision on his claim if he produced no medical records, not that it would be denied. (ECF No. 17-2 at 20 (including a note indicating a 'yes' response to the prompt "Advised std benefits will have to be placed on suspension without benefit determination if abilities manager has not received medical data.").)

Plaintiff appealed Defendant's decision on March 11, 2016. (ECF No. 17-4 at 123.) Defendant allowed Plaintiff to submit additional medical documentation during his appeal, retained a doctor to conduct an independent review of that medical documentation, and

spoke with Plaintiff several times. However, Defendant ultimately denied Plaintiff's appeal on May 12, 2016. (*Id.* at 184.) Defendant summarized its reasons for denying Plaintiff's appeal in a letter:

> [B]ased on our review of the submitted documentation, and for the reason mentioned above, we have upheld our original decision to deny your benefits as of November 07, 2015. Specifically, the received information reflects you have excessive daytime somnolence. You have been medically instructed to use your CPAP machine; however, the received information reflects that you are not using a CPAP machine. Additionally, you confirmed that you have not received a CPAP machine. It is documented that you have excessive daytime somnolence and have had several accidents and as a result you are unsafe to be driving; however, your job duties as an office associate does not require you to drive or operate heavy machinery. Lastly, you stated that you are exhausted, sleep everywhere, and are constantly falling asleep no matter what you are doing; however, none of your treating providers have documented that you have fall sleep during your examinations or while in their office. Therefore, the original decision to terminate Short-Term Disability benefits, effective November 07, 2015, has been upheld.

(*Id.* at 185.) Plaintiff thereafter initiated this action to challenge that determination.

## IV. CONCLUSIONS OF LAW

The Court finds that Defendant incorrectly denied benefits on Plaintiff's initial claim based on a lack of medical records to support his claimed disability, even though Defendant was waiting for records from Plaintiff's treating physicians, and nothing in Defendant's Policy required it to decide when it did. Plaintiff argues that Defendant used an arbitrary 14-day timeline as a sword to prevent Plaintiff from providing proof to support his claim, so that Defendant could deny his claim. (ECF No. 27 at 2.) Plaintiff also argued at the Hearing this effectively denied Plaintiff an internal appeal. Defendant essentially counters that Plaintiff bears the burden of providing support for his claim, and he did not in the 14-day time frame that Defendant adequately notified him it was proceeding under, nor did Plaintiff request extra time to submit records. (ECF No. 26 at 8-9.) The Court agrees with Plaintiff.

To start, nothing in the Policy required Defendant to decide within 14 days. In fact, the Policy generally requires Defendant to decide within 45 days. (ECF No. 17-7 at 2.) And as Plaintiff points out (ECF No. 27 at 2-3), the portion of the Policy Defendant cites in support of the proposition "that Aetna expects to make a determination within 15 days"

6

does not actually support Defendant's argument (ECF No. 26 at 8 (citing ECF No. 17-5 at 24 (providing that "[a]ny unpaid balance as to Short Term Disability Income will be paid within 15 days of receipt by Aetna of the due written proof.")).) Therefore, Defendant's argument that it had to deny Plaintiff's claim at the conclusion of a 14-day investigation even while it was waiting on medical records is unpersuasive.

The AR further reflects that Plaintiff did not understand his claim would be denied on November 20, 2015 if he did not submit documentation by that date. While Defendant left Plaintiff several messages stating it would decide his claim by November 20, the AR reflects that he did not understand those messages, or may have not received some of them. (ECF No. 17-2 at 70.) Further, while a letter also told him Defendant would decide on November 20, the letter began with a statement that Plaintiff could disregard it if he spoke with one of Defendant's representatives after the date of the letter—and he did, so he could have properly disregarded the letter. (ECF Nos. 17-2 at 70, 17-4 at 160.) There is also no note indicating that Defendant's representative explained to Plaintiff his claim would be decided on November 20 when he actually called in on November 16. (ECF No. 17-2 at 70.) And the AR reflects that Plaintiff was informed on a voicemail he said he did not understand that a decision on his claim would merely be deferred—not denied—if he failed to provide medical records by November 20. (ECF No. 17-2 at 20.) Thus, it was unfair to Plaintiff when Defendant decided Plaintiff's claim on November 20 on the basis of not having received any medical records to support his claim, particularly when Defendant requested records from the two providers whose names Plaintiff provided.

Considering that "ERISA was enacted to promote the interests of employees[,]" *Firestone*, 489 U.S. at 113, Defendant should have—at a minimum—waited a few more days to gather medical records before denying Plaintiff's initial claim. There can be no question that denying Plaintiff's initial claim on arbitrary procedural grounds not grounded in the Policy did not promote Plaintiff's interests here. Of course, Plaintiff's interest was to receive STD benefits, and he has not received them to date. But even if Defendant ultimately made the right decision on the merits during Plaintiff's appeal, it never reached

the merits of his claim until that appeal. And that deprived Plaintiff of an important right—the right to an appeal. Because of the way Defendant handled this claim, Plaintiff essentially received his initial claim review during his appeal with Defendant, and is now pursuing his appeal in this Court.

Defendant's decision to essentially collapse its review of Plaintiff's claim from two levels into one violates the spirit of both ERISA and the Policy. First, ERISA requires that Defendant "afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim." 29 U.S.C. § 1133(2). Plaintiff effectively presented his evidence for the first time on appeal, which did not allow for a full and fair review of his claim. Second, the Policy clearly provides for an appeal right. (ECF No. 17-7 at 2-3.) As noted, Plaintiff was denied meaningful access to an appeal. Thus, Defendant's decision to deny Plaintiff's initial claim on procedural grounds less than 45 days after he submitted it violated the spirit of both ERISA and the Policy—and was thus incorrect.

The Court will therefore remand Plaintiff's STD benefits claim to Defendant for further investigation because Defendant's decision to initially deny his claim was incorrect. In addition, because the Court understands that Plaintiff is ineligible for long-term disability benefits where, as here, his STD benefits claim has been denied—and the Court will remand Plaintiff's STD benefits claim to Defendant for further consideration—the Court will also order Defendant to consider Plaintiff's eligibility for long-term disability benefits.

**V. CONCLUSION**

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the Motion.

It is therefore ordered that Plaintiff's motion for judgment on the pleadings and administrative record (ECF No. 23) is granted in part. Defendant is ordered to re-open and further investigate Plaintiff's short-term disability benefits claim, including by considering any additional evidence Plaintiff would like to offer, and to also consider whether Plaintiff

is entitled to long-term disability benefits under the Home Depot, USA, Inc. Long-Term Disability Plan. The motion is denied in all other respects.

The Clerk of Court is directed to enter judgment accordingly and close this case.

DATED THIS 8th day of August 2019.

_____
MIRANDA M. DU
UNITED STATES DISTRICT JUDGE